UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| TREVOR KEENER<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GILLMAN NORTH, INC. d/b/a Gillman Auto Group, d/b/a Gillman Acura of Houston<br><br>　　　　Defendant. | Civil Action No.<br><br>EXEMPT FROM FILING FEES PURSUANT TO 38 U.S.C. § 4323(h)(1)<br><br>JURY TRIAL DEMANDED |

**COMPLAINT AND JURY DEMAND**

Plaintiff Trevor Keener ("Mr. Keener" or "Plaintiff"), by and through his undersigned counsel, alleges as follows:

**NATURE OF THIS ACTION**

1.　This is a civil action brought pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §4301-4335 ("USERRA"). It is brought by Mr. Keener against Defendant, Gillman North, Inc. d/b/a Team Gillman Acura, d/b/a Gillman Acura of Houston d/b/a Gillman Auto Group. ("Gillman" or "Defendant").

**JURISDICTION AND VENUE**

2.　The Court has jurisdiction over the subject matter of this civil action founded upon federal question jurisdiction, 28 U.S.C. §1331, as conferred by actions arising under USERRA, 38 U.S.C. §4323(b)(1).

3.　Venue is proper in this judicial district under 38 U.S.C. §4323(c)(2) because Defendant maintains a place of business in this judicial district and is considered a "private employer" for the purposes of 38 U.S.C. §4303(4)(A).

1

**PARTIES**

4. Plaintiff resides at 9525 N Capital of Texas Highway, Unit 113, Austin, Texas 78759.

5. Plaintiff suffers from hearing impairment.

6. Upon information and belief, Defendant is a private, for-profit company registered as a foreign limited liability company in the State Texas with a principal place of business located at 10595 W. Sam Houston Parkway S, Houston, TX,77099. At all times relevant, Gillman was and is an employer for purposes of 38 U.S.C. § 4303 (4)(A) and § 4323(i).

7. Plaintiff was, at all pertinent times alleged herein, employed by Defendant and also served in the United States Navy Reserve ("USNR"), holding the ranks of E-4 and E-5 during the time of his employment. Plaintiff is a qualified employee and member of the uniformed services for purposes of 38 U.S.C. §4303(3), (9), and (16).

8. At the time of his termination from Gillman, Mr. Keener was earning approximately $80,000 annually.

9. Whenever and wherever reference is made to individuals who are not named as defendants in this action, but were employees/agents of the defendant, or any of them herein, such individuals at all times acted on behalf of the defendant named in this action within the scope of their respective employments and agencies.

**GENERAL ALLEGATIONS**

10. On or about October 17, 2016, Gillman's Operations Manager Ray Gagliardi hired Mr. Keener as a car salesperson to sell new Acuras and used vehicles. Upon accepting the position, Mr. Keener provided Mr. Gillman with a schedule of his then-known military service dates, the first of which was from April 20- 23, 2017.

11. Plaintiff performed the military orders from April 20-23, 2017 and returned to work.

12. Plaintiff used accrued vacation time to attend his military service obligations from April 20-23, 2017.

13. On or about June 2017, Plaintiff moved within the Company from Sales to the Service Department, under the supervision of Bob Gelske, where he excelled.

14. Immediately upon his transfer from Sales to Service, Defendant notified Plaintiff that since he missed one Saturday a month due to Navy drill, he would be required to work all other Saturdays in the month. No other employee at Gillman in the Service Advisor role was required to work every Saturday.

15. In August 2017, Plaintiff again received orders to military service, which were originally scheduled between August 15-30, 2017. Plaintiff's orders were extended due to Hurricane Harvey.

16. Mr. Gelske's response was *"Do you have to go? Don't you need to take vacation to go? What are you even doing there,"* among other comments.

17. While Plaintiff was on his military orders, he received numerous text messages from Mr. Gelske stating Mr. Keener needed to get back to work and was expected back September 2, 2017

18. On September 2, 2017, three hours after completing his military orders, Plaintiff took a redeye flight back to Houston, arriving at 8:00 a.m. and was back at Defendant's worksite by noon.

19. Upon his return Plaintiff was greeted with multiple questions about his leave, including *"how was your vacation?"*

20.     Shortly thereafter, Mr. Gelske began to issue write-ups about Mr. Keener's tardiness.

21.     On or about September 15, 2017, with Mr. Gelske's approval, Mr. Keener changed his shift from 7:00 a.m. to 5:00 p.m. to 8:00 a.m. to 6:00 p.m. which alleviated the tardiness issue.

22.     On or about November 20, 2017, Mr. Keener received emergency orders to assist in the rescue of the missing submarine ARA San Juan off the coast of Virginia. At that time, he was one of the few enlisted submariners in his unit and was urgently needed.

23.     Plaintiff promptly notified Mr. Gelske of his pending military service obligations.

24.     On November 20, 2017, Plaintiff left work at Gillman at noon to commence his emergency military orders.

25.     Immediately upon his departure, Plaintiff received a call from Mr. Gelske stating Mr. Keener could not leave, that his leaving was considered voluntary and that he would not be holding Mr. Keener's job open for him upon his return. Mr. Keener responded that he could not do that because he was leaving on orders and that Mr. Gelske should speak with Human Resources ("HR").

26.     At 4:30 p.m. on November 20, 2017, Plaintiff texted Mr. Gelske to inform him of his orders timeline and when he anticipated to return to work. Mr. Gelske responded, *"I need you to understand that if this is voluntary then I will not be able to hold your seat for this long. You leaving will be a voluntary resignation seeing you have no vacation accrued."*

27.     Mr. Keener left on emergency orders uncertain if he would have a job when he returned.

28.     After completing his military service obligations, Mr. Keener timely applied for reemployment and returned to work at Gillman on or about December 2, 2017.

29. On or about July 2018, Mr. Keener received a new set of orders for military service obligations from July 16, 2018, through August 1, 2018, and timely notified Gillman, through Mr. Gelske.

30. On August 2, 2018, having completed his orders, Mr. Keener timely applied for reemployment and returned to work.

31. On August 8, 2018, Mr. Keener was in a conversation with a co-worker who was over 15 feet away and speaking in a low mumbling voice, so Mr. Keener was unable to hear the co-worker because of his hearing impairment.

32. Shortly thereafter. Mr. Gelske terminated Mr. Keener's employment with Gillman for allegedly "arguing with another service advisor in front of a customer."

## VIOLATIONS OF 38 U.S.C. §4301 *et seq.*

33. Plaintiff incorporates by reference the allegations contained in the above Paragraphs of this Complaint with the same force and effect as if fully restated herein.

34. USERRA prohibits "discrimination against persons because of their service in the uniformed services." 33 U.S.C. §4301(a)(3).

35. Section 4311(a) of USERRA states, in relevant part, that a person "who is a member of[,]… performs, has performed… or has an obligation to perform service in a uniformed service shall not be denied … reemployment, retention in employment, … or any benefit of employment by an employer on the basis of that membership, … performance of service, or obligation."

36. Section 4311(c) further provides, in relevant part, that "[an] employer shall be considered to have engaged in actions prohibited… if the person's membership… or obligation for service in the uniformed services is a motivating factor in the employer's action."

37. A "benefit of employment" is defined as:

> The term 'benefit', 'benefit of employment', or 'rights and benefits' means the terms, conditions, or privileges of employment, include any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations and *the opportunity to select work hours* or location of employment.

38 U.S.C. §4303(2) (italics added).

38. A "benefit of employment" includes the right to select work hours or the location of employment. 20 C.F.R. §1002.5(b).

39. USERRA's definition of "service in the uniformed services" covers all categories of military training and service, including duty performed on a *voluntary* or *involuntary* basis, in time of peace or war. 38 U.S.C. §4303(13); 20 C.F.R. §1002.6 (emphasis added).

40. If the period of service in the uniformed services was less than 31 days, or the employee was absent from a position of employment for a period of any length for the purpose of an examination to determine his or her fitness to perform service, the employee must report back to the employer not later than the beginning of the first full regularly-scheduled work period on the first full calendar day following the completion of the period of service, and the expiration of eight hours after a period allowing for safe transportation from the place of that service to the employee's residence. 20 C.F.R. §1002.115; 38 U.S.C. §4312(e)(1)(A)(i).

41. Defendant forcing Plaintiff to work every other Saturday in a month violates USERRA because prior to performing his military service obligations, Plaintiff did not work every Saturday in a month, and no other Gillman employee was forced to work every Saturday. Defendant admitted Plaintiff was only being forced to work every Saturday because of his absences to perform military service obligations.

6

42.     Defendant forcing Plaintiff to return to work on September 2, 2017 after traveling from his military service site less than three hours after his military service was complete violates Section 4312(e)(1)(A)(i) of USERRA.

43.     Mr. Gelske's phone call and text on November 20, 2017 violate USERRA because they clearly indicate Defendant would not protect Plaintiff's voluntary service and would terminate him.

44.     Mr. Gelske's termination of Plaintiff on August 8, 2018 was pretextual; the true reason for Defendant terminating Plaintiff was his military service obligations.

45.     Plaintiff's protected status as a member of the USNR was a substantial or motivating factor in Defendant terminating his employment.

46.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered injuries and damages, including, but not limited to, loss of past earnings and benefits, and loss of future earnings and benefits, all amounts to be proven at trial.

47.     Plaintiff alleges that Defendant had knowledge of Plaintiff's USERRA protections, and that Defendant's violations of USERRA were willful and requests liquidated damages in an amount equal to the amount of his lost wages and other benefits pursuant to 38 U.S.C. §4323(d)(1)(C).

48.     Pursuant to 38 U.S.C. §4323(h)(2), Plaintiff further requests an award of reasonable attorney's fees, expert witness fees, and litigation expenses.

## **PRAYER FOR RELIEF**

**WHEREFORE**, based upon the foregoing, Plaintiff prays for the following relief against Defendant:

1. A declaration that Defendant's actions and practices complained of herein are unlawful and in violation of USERRA, 38 U.S.C. §4301, *et seq*.;

2. Requiring that Defendant fully comply with the provisions of USERRA by providing Plaintiff all employment benefits denied to him as a result of the unlawful acts and practices as complained herein.

3. Awarding fees and expenses, including attorneys' fees pursuant to 38 U.S.C. §4323(h)(2);

4. Awarding Plaintiff prejudgment interest on the amount of lost wages and employment benefits found due;

5. Order that Defendant pays compensatory and/or liquidated damages in an amount equal to the amount of lost compensation and other benefits suffered by reason of Defendant's willful violation of USERRA;

6. Grant an award for costs of suit incurred; and

7. Grant such other further relief as may be just and proper, and which Plaintiff may be entitled to under all applicable laws.

Dated: January 24, 2023                              Respectfully submitted,

*/s/Brian J. Lawler*
Brian J. Lawler, Esq. *pro hac vice* pending
Blawler@pilotlawcorp.com
**PILOT LAW, P.C.**
4632 Mt. Gaywas Dr.
San Diego, CA 92117
Telephone: (866) 512-2465

Attorneys for Plaintiff

## JURY TRIAL DEMANDED

A jury trial is demanded on all claims so triable.

Dated:  January 24, 2023                              Respectfully submitted,

*/s/Brian J. Lawler*
Brian J. Lawler, Esq. *pro hac vice* pending
Blawler@pilotlawcorp.com
**PILOT LAW, P.C.**
4632 Mt. Gaywas Dr.
San Diego, CA  92117
Telephone: (866) 512-2465

Attorneys for Plaintiff